ELLSWORTH & ASSOCIATES, LTD.
Keen L. Ellsworth, Esq.
Arizona Bar No. 015419
5840 W Craig Rd., Ste 120-338
Las Vegas, NV  89130-2561
Telephone: (702) 767-9987
Facsimile: (702) 920-9871
Email: wynter@silverstatelaw.com
*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MILDRED BRUNNER, AN INDIVIDUAL; ERIC BRUNNER, AN INDIVIDUAL, <br><br> Plaintiffs, <br><br> vs. <br><br> YAVAPAI COUNTY, ARIZONA; PAST AND PRESENT MEMBERS OF THE YAVAPAI COUNTY BOARD OF SUPERVISORS, IN THEIR INDIVIDUAL CAPACITIES, TO BE LATER NAMED BUT NOW IDENTIFIED AS DOES 1 THROUGH 10; SEDONA-OAK CREEK AIRPORT AUTHORITY, A NON-PROFIT ENTITY; EDWARD ROSE, AN INDIVIDUAL; PAM FAZZINI, AN INDIVIDUAL; AND PAST AND PRESENT BOARD MEMBERS AND MANAGERS OF THE SEDONA-OAK CREEK AIRPORT AUTHORITY, IN THEIR INDIVIDUAL CAPACITIES, TO BE LATER NAMED BUT NOW IDENTIFIED AS ROES 1 THROUGH 10, <br><br> Defendants. | Case No: 3:23-CV-08517-MTL <br><br> **AMENDED COMPLAINT FOR** <br> **1) VIOLATION OF UNITED STATES SUPREMACY LAW;** <br> **2) VIOLATION OF THE FOURTEENTH AMENDMENT;** <br> **3) DISCRIMINATION PROHIBITED BY 42 U.S.C. §1983 (AGAINST YAVAPAI COUNTY AND SOCAA);** <br> **4) DISCRIMINATION PROHIBITED BY 42 U.S.C. §1983 (AGAINST SUPERVISORS AND MANAGERS OF YAVAPAI COUNTY AND SOCAA, INDIVIDUALLY)** |

**COME NOW**, Plaintiffs, Mildred Brunner, an individual, and Eric Brunner, an individual, by and through their counsel, Keen L. Ellsworth, Esq., of the law firm of Ellsworth & Associates, Ltd, and hereby respectfully lodge their *Complaint* as follows:

## I.

### JURISDICTION

1. This Court has original jurisdiction over the subject matter of this action pursuant to (1) 28 U.S.C. §§1331 and 1343 because the matters in controversy arise under laws of the United States; (2) because this suit seeks redress for the deprivation, under color of state law, for rights secured by the United States Constitution; and (3) this Court's inherent jurisdiction to grant equitable relief for violations of the United States Constitution.

2. This Court has personal jurisdiction over Defendants because they are domiciled in, reside in, or are a county located in Arizona, and because their denial of Plaintiffs' rights under the United States Constitution and the laws of the United States occurred within Arizona. The injuries caused by each Defendant occurred in Arizona.

3. Venue is proper in the District of Arizona because Defendants reside and/or do business in the District and because a substantial part of the events or omissions giving rise to the claims occurred in the District.

4. This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§2201 and 2202.

5. This Court also has authority to enter injunctive relief for Defendants' violation of federal law and the United States Constitution through equity jurisdiction authorized by *Ex Parte Young*, 209 U.S. 123 (1908), and the cases that followed.

///

## II.

## PARTIES

6. Plaintiffs re-allege and incorporate herein by reference all allegations contained in the above paragraphs, as if fully set forth herein.

7. Plaintiff, Mildred Brunner (hereinafter "Mildred"), is the sole owner of Dakota Territory Tours, A.C.C. (hereinafter "Dakota"), an Arizona entity which performed air tours from the Sedona-Oak Creek Airport in Arizona for over twenty-five (25) years. Dakota was created by Mildred and her late husband, Larry Brunner. Dakota was profitable for Mildred prior to the acts complained of herein, but Dakota is now bankrupt and being involuntarily liquidated in a Chapter 7 bankruptcy proceeding because of the acts of Defendants complained of herein.

8. Plaintiff, Eric Brunner (hereinafter "Eric"), is and has been, a resident of Arizona for all times relevant hereto.

9. Defendant, Yavapai County, Arizona (referred to hereinafter as "County" or "Yavapai County") is the owner and sponsor of the Sedona-Oak Creek Airport ("Sedona Airport") and is legally responsible for the acts complained of herein.

10. Defendants, The Unnamed Defendants, Past and Present Members of the Yavapai County Board of Supervisors, are or were elected officials for Yavapai County, whose names are currently unknown to Plaintiffs, but are now identified as Does 1 through 10, who were involved with, knew of, or should have known of, the acts complained of in this *Complaint*.

11. Defendant, Sedona-Oak Creek Airport Authority ("SOCAA") is a non-profit entity created by Yavapai County to operate the Sedona Airport for Yavapai County, and as such SOCAA is the authorized agent of Yavapai County for matters relating to the Sedona Airport.

12. Defendant, Edward Rose, is the current manager of SOCAA and is a resident of Arizona and has been actively involved in the affairs of SOCAA as complained of in this *Complaint*.

13. Defendant Pam Fazzini, an individual, is the current Board President of SOCAA, and has been actively involved in the affairs of SOCAA as complained of in this *Complaint*.

14. Defendants, The Unnamed Defendants, Past and Present Board Members and Managers of the Sedona-Oak Creek Airport Authority, are those Board Members and/or Managers whose names are currently unknown to Plaintiffs, but are now identified as Roes 1 through 10, who were involved with, knew of, or should have known of, the acts complained of in this *Complaint*.

15. Plaintiffs are informed and believe and thereon allege each of the Defendants designated herein as Does 1 through 10 and Roes 1 through 10 are responsible in some manner for the actions, obligations, events, and happenings referred to in this *Complaint*, and Plaintiffs will ask for leave of this Court to amend the *Complaint* to insert the true names and capacities when the same have been ascertained and to join such Defendants in this action, together with proper charges and allegations.

16. At all times mentioned and relevant herein, each of the Defendants named herein were the agents, representatives, servants, employees, or joint venturers of every other Defendant herein, and at all times relevant herein were acting within the scope and course of said agency, employment, or joint venture with knowledge and permission and consent of all other named Defendants.

## III.

### LEGAL BACKGROUND

17. Plaintiffs re-allege and incorporate herein by reference all allegations contained in the above paragraphs, as if fully set forth herein.

18. The United States Congress has preempted the field of aviation and air carrier regulation. Consequently, Defendants are not permitted to take any action which violates Federal Aviation Law, and any effort to do so violates the Supremacy Clause of the United States Constitution.

19. Congress determined preemption was necessary for the following reasons (among others): to ensure the availability and access to federally funded airports, including the Sedona Airport, without unreasonable discrimination; and prevent unfair, deceptive, predatory, or anticompetitive practices in air transportation. *See* 49 U.S.C. §40101.

20. Defendants are not permitted to discriminate against any operator by favoring one operator over another when providing access to the Sedona Airport, regardless of any state law.

21. A "person" subject to liability under 42 U.S.C. §1983 can also be a local governing body (*see Waggy v. Spokane County*, 594 F.3d 707, 713 (9th Cir. 2010)).

22. Yavapai County and SOCAA, as governing bodies, are liable as a matter of law for the acts of the officials and individuals who exercise their authority to discriminate against Plaintiffs, as outlined in this *Complaint*.

23. In addition to Yavapai County and SOCAA, 42 U.S.C. §1983 imposes personal liability on those individuals who participated in, had supervisory responsibility over, knew of, or should have known of, the illegal discrimination outlined in this *Complaint*.

### IV.

### STATEMENT OF FACTS

24. Plaintiffs re-allege and incorporate herein by reference all allegations contained in the above paragraphs, as if fully set forth herein.

///

A.   **SEDONA AIRPORT**

25.   Development of the Sedona Airport was financed in part with funding from the FAA Airport and Improvement Program (AIP), authorized by the Airport and Airway Improvement Act of 1982, as amended, 49 U.S.C. §47101, *et seq*.

26.   Between 1982 and 2020, Sedona Airport received approximately $14 million in AIP funding.

27.   For multiple reasons, including the receipt of AIP funds, Yavapai County is obligated to comply with FAA sponsor grant assurances and related Federal Law, 49 U.S.C. §47101.

28.   The United States conveyed the land, which constitutes Sedona Airport, to Yavapai County under two deeds of conveyance executed under Section 16 of the Federal Airport Act. Yavapai County is obligated to comply with the covenants included in the deeds of conveyance.  The covenants include, among other things, the right of the United States to take the land back from Yavapai County if Yavapai County, either by its own conduct or because of SOCAA's conduct, if found to have violated those covenants.

29.   Yavapai County created SOCAA to be its agent in managing Sedona Airport.

30.   The majority, but not all, of the acts complained of herein were committed by SOCAA, its Board Members, its Managers, and its agents. Because Yavapai County created SOCAA to be its agent to manage the Sedona Airport, Yavapai County is responsible and liable for the acts of SOCAA and its Board Members and Managers.

B.   **THE BEGINNING**

31.   In or about the beginning of 1994, Dakota leased space at the Sedona Airport and enjoyed a relatively peaceful business relationship with Yavapai County, operating an air tour business from Sedona Airport.

32. Dakota's business name was Sedona Air Tours.

33. By 2013, Dakota had been a tenant at Sedona Airport longer than any other tour operator, it is believed.

34. Dakota used its own fuel truck to refuel its aircraft at Sedona Airport, which was important to its profitability because it could purchase fuel at reasonable market rates.

35. Dakota leased a storefront/check-in-counter location at Sedona Airport, which was critical to Dakota's business because it attracted many walk-in customers purchasing tours from Dakota.

36. Dakota also leased hangar space and helipads at Sedona Airport. The hangar space was important because it provided space to maintain, repair, and store Dakota's aircraft and parts. The helipads were important to Dakota's business because they were close in proximity to the storefront/check-in-counter, which allowed for quick and safe transportation of customers to and from Dakota's helicopters.

## C. THE DISCRIMINATION

37. Beginning in about 2014, SOCAA and its agents began to engage in acts against Dakota, discriminating against Dakota's rights without lawful authority and in violation of Federal Law.

38. These discriminatory acts included, among others, prohibiting Dakota from using the helipads, forcing Dakota to purchase fuel from Sedona Airport at inflated prices, improperly trying to remove Dakota from the storefront/check-in-counter space, and refusing to allow Dakota a hangar lease.

39. SOCAA and its agents committed these acts against Dakota but not against other similarly situated operators utilizing facilities at Sedona Airport.

40. In furtherance of its discrimination, Defendants SOCAA and its agents began unfounded personal attacks, false accusations against, and invading

the privacy of (1) principals, (2) executives, and (3) employees of Dakota, including but not limited to Plaintiff Eric.

41. The discriminatory acts and attacks by SOCAA and its agents included, among other things, (1) spreading false rumors that Plaintiff Eric was violent, (2) secretly placing tracking devices on vehicles utilized by Dakota personnel, including Plaintiff Eric's vehicles, (3) hiring private investigators to secretly follow Dakota personnel, including Plaintiff Eric, and (4) prohibiting anyone from Dakota, especially Plaintiff Eric, from attending County or SOCAA meetings unless the Defendants first hired security guards to be present, implying Plaintiff Eric or someone else from Dakota would breach the peace, which they never did.

### D. THE FAA PART 16 COMPLAINT

42. Because of this abuse and discrimination, on or about November 27, 2017, Dakota filed a complaint with the FAA against Defendants Yavapai County and SOCAA, under Title 14, Chapter 1, Part 16 of the Code of Federal Regulations ("Part 16 Complaint").

43. The Defendants denied the allegations in the Part 16 Complaint.

44. The FAA's administrative process for the Part 16 Complaint was followed, and all issues complained of therein were thoroughly briefed by all sides.

45. In the meantime, SOCAA and its agents continued their discrimination against Dakota and spent substantial sums of money on legal fees and other costs in furtherance of their discriminatory plan to remove Dakota from Sedona Airport.

46. On July 29, 2021, the FAA issued its decision on the Part 16 Complaint, entitled Director's Determination, FAA Docket No. 16-17-18 (the "Determination"). ***The FAA found SOCAA directly engaged, and was still engaging, in unlawful discriminatory acts against Dakota.***

47. In its Determination, the FAA found Yavapai County was legally responsible for the acts of SOCAA, and the FAA ordered Yavapai County and SOCAA to immediately correct their behavior, complete a Corrective Action Plan ("CAP"), and submit the CAP to the FAA for review and possible approval.

48. The FAA also ceased all Federal funding for Sedona Airport until the FAA was satisfied with the CAP and satisfied SOCAA had corrected its discriminatory behavior.

49. Shortly after the FAA Determination was issued, Dakota sought to participate with Defendant SOCAA in formulating the CAP, but SOCAA refused.

50. Incredibly, not only did SOCAA and its agents refuse to comply with the FAA's order to create the CAP, but SOCAA and its agents increased its discrimination and harassment against Dakota and its personnel.

51. Specifically, *after* SOCAA had full knowledge of the FAA's findings that SOCAA was unlawfully discriminating against Dakota, SOCAA and its agents evicted Dakota from the Sedona Airport, prohibited Dakota from having any reasonable access to Sedona Airport, changed the locks on the storefront/check-in-counter doors (after Dakota's personnel had left for the day), and demanded Dakota immediately remove all of its belongings from the storefront/check-in-counter location.

E.   **THE DESTRUCTION OF DAKOTA BY DEFENDANTS**

52. Yavapai County officials either knew, or should have known, of the discrimination and harassment against Dakota but chose to do nothing about it. Worse yet, Yavapai County officials specifically allowed SOCAA and its agents to continue prohibiting Dakota from having reasonable access to Sedona Airport with full knowledge the FAA found SOCAA and its agents were illegally discriminating against Dakota.

53. At no time was the FAA Determination stayed, which shows Defendants' failure to comply with the FAA Determination was in bad faith, and

intentional, with a complete disregard for the rights of Dakota *and* the authority of the FAA.

54. After being evicted from the storefront/check-in-counter location at Sedona Airport, Dakota attempted to continue its business at Cottonwood Airport, located about twenty (20) miles southwest of Sedona Airport.

55. However, without a storefront/check-in-counter at Sedona Airport, and without access to Sedona Airport, there was no reasonable way for Dakota to financially survive.

56. Dakota filed for reorganization under Chapter 11 of the United States Bankruptcy Act.

57. Dakota prepared a comprehensive and thorough plan to reorganize, but Dakota's efforts were vehemently opposed by SOCAA in its ongoing attacks against Dakota.

58. On or about October 14, 2022, the Bankruptcy Court converted Dakota's case to a Chapter 7 for liquidation, and the assets of Dakota are currently being liquidated.

F.   THE APPEAL OF THE FAA DETERMINATION

59. Defendants filed an appeal of the FAA Determination. Defendants and Dakota again thoroughly briefed all relevant issues on appeal.

60. On May 9, 2023, about seven (7) months ***after*** the Bankruptcy Court converted Dakota's filing to a Chapter 7 liquidation, the FAA issued its Final Agency Decision on the appeal ("Final Decision"). The FAA again ruled in favor of Dakota and affirmed the prior findings and conclusions of the Determination, stating the Determination "is supported by a preponderance of reliable, probative, and substantial evidence and is consistent with applicable law, precedent, and FAA policy." *Final Decision at 2.*

61. The FAA further found as follows:

"County has not attempted any level of compliance by engaging in the CAP process as called for in the DD (Determination) despite asking for additional time to do just that. Instead, the County has permitted its agent, the Sedona-Oak Creek Airport Authority, to proceed with imposing and pursuing its position that Complainants can be restricted from operating at the Airport."

*Final Decision at 14*.

62. The FAA's finding that Defendants failed to participate in the CAP process is evidence of intentional discrimination and bad faith, especially by SOCAA and its agents who were directly involved by orchestrating the harmful acts against Dakota and Plaintiffs Mildred and Eric.

63. The FAA further stated in its Final Decision that Yavapai County "must develop a CAP that permits Complainants, . . . or other similar operators, to operate . . . in a manner consistent with the applicable federal obligations as discussed in this determination." *Final Decision at 15*. However, once again neither SOCAA nor Yavapai County even attempted to contact Plaintiffs Mildred or Eric to develop a CAP.

64. The discriminatory and illegal acts of Defendants destroyed Dakota's business, forced it into bankruptcy, and thereby caused permanent financial harm to Plaintiffs Mildred and Eric, who now seek compensation for the damages caused by those discriminatory and illegal acts.

65. Plaintiff Mildred and her late husband invested substantial time and money in Dakota, and their investment is now gone. Dakota was also the only source of income for Plaintiff Mildred, who is 73 years old and no longer reasonably able to provide an income. Plaintiff Mildred seeks compensation for the profits she would have received from Dakota, as well as for the value of the company and its substantial assets, had Defendants not discriminated against Dakota and destroyed Dakota's business. Plaintiff Mildred further seeks

reasonable and equal access to Sedona Airport, as well as punitive damages for the unlawful, illegal, and intentional discrimination by Defendants.

66. Plaintiff Eric seeks compensation for defamation, damage to his good name and reputation, and for the invasion of privacy committed by Defendants.

## V.

### FIRST CAUSE OF ACTION

### VIOLATION OF UNITED STATES SUPREMACY LAW

### (BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS FOR INJUNCTIVE RELIEF)

67. Plaintiffs re-allege and incorporate herein by reference all allegations contained in the above paragraphs, as if fully set forth herein.

68. The Supremacy Clause of the U.S. Constitution provides the "Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." *U.S. Const., Art. VI*.

69. Congress has preempted the field of aviation and air carrier regulation. Consequently, Defendants are not permitted to take any action, even if permitted by state law, which violates Federal Aviation Law.

70. The conduct of SOCAA, in creating unreasonable and illegal restrictions in access to Sedona Airport for Dakota, is and was contrary to Federal Aviation Law and is therefore unconstitutional because it violated Supremacy Clause. Yavapai County is responsible for, and liable for, the acts of SOCAA and its agents.

71. SOCAA's actions were unreasonable, arbitrary, and discriminatory.

72. The matter is ripe for adjudication, and Plaintiff's Mildred and Eric otherwise meets all requirements necessary for injunctive relief.

73. Plaintiffs Mildred and Eric are entitled to a preliminary and permanent injunction stopping Defendants from discriminating against them.

74. More specifically as to Plaintiff Mildred, she is also entitled to an order by this Court requiring Defendants, (1) to allow Plaintiff Mildred full and equal access to the storefront/check-in-counter, helipads, and hangar space on lease terms which are the same or substantially similar to all other operators at Sedona Airport, and (2) to allow Plaintiff Mildred to provide her own fuel for her aircraft.

75. Plaintiffs Mildred and Eric further seek an award of legal fees and costs for having to enforce their constitutional rights.

## VI.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE FOURTEENTH AMENDMENT AND OTHER FEDERAL LAWS
## (BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

76. Plaintiffs re-allege, and incorporate herein by reference, all allegations contained in the above paragraphs, as if fully set forth herein.

77. Defendants committed affirmative acts, as outlined in this *Complaint*, violating the Fourteenth Amendment of the United States Constitution and other federal laws.

78. The affirmative acts by Defendants placed Plaintiffs in a position where they were harmed, when Plaintiffs otherwise would not have been harmed, but for the actions of Defendants.

79. Defendants acted with a deliberate indifference to the known and obvious danger and risks their actions imposed on Plaintiffs.

80. Defendants knew, at least in part, their actions were illegal and harmful to Plaintiffs and Dakota because of the findings by the FAA in the *Determination* and in the *Final Decision*.

81. Despite this knowledge of their illegal and harmful acts, Defendants continued with affirmative acts, and engaged in new affirmative acts, which continued to cause serious and substantial harm to Dakota and Plaintiffs.

82. The affirmative acts by Defendants created the actual harm suffered by Plaintiff Mildred when Defendants, among other acts, treated Dakota and differently than they treated other similar operators, and because they specifically forced Dakota out of Sedona Airport, which resulted in Dakota filing bankruptcy and going completely out of business.

83. The affirmative acts by Defendants created the actual harm suffered by Plaintiff Eric when Defendants, among other acts, discriminated against Dakota (which effectively forced Dakota out of business and destroyed Plaintiff Eric's sole source of income), placed tracking devices on Plaintiff Eric's vehicles, hired private investigators to follow Eric, and directly and indirectly informed the public that Eric was violent and could not be trusted.

84. The acts by Defendants against Plaintiff Eric constitute an invasion of privacy, which is also a violation of the Fourteenth Amendment.

85. As a result of Defendants' violations of federal laws, Plaintiffs are entitled to an award of damages, in an amount to be proven at trial.

86. Plaintiffs are also entitled to punitive damages for the intentional and willful misconduct by Defendants.

87. Plaintiffs are also entitled to attorneys' fees and costs incurred by this lawsuit.

## VII.

### THIRD CAUSE OF ACTION

### DISCRIMINATION PROHIBITED BY 42 U.S.C. §1983

### (BY ALL PLAINTIFFS AGAINST DEFENDANTS YAVAPAI COUNTY AND SOCAA FOR ECONOMIC AND NON-ECONOMIC DAMAGES)

88. Plaintiffs re-allege, and incorporate herein by reference, all allegations contained in the above paragraphs, as if fully set forth herein.

89. The 14th Amendment is a law of the United States and guarantees equal protection under the law for Dakota and Plaintiffs.

90. 49 U.S.C. §47101 *et seq.* is a law of the United States which guarantees Dakota and Plaintiffs reasonable and equal access to Sedona Airport.

91. 42 U.S.C. §1983 states any person or persons who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

92. Each Defendant identified in this *Complaint*, including the unnamed Defendants, is a person within the meaning of 42 U.S.C. §1983.

93. Under the color of law, each Defendant discriminated against Dakota and Plaintiffs by, among other acts, (1) evicting Dakota and otherwise prohibiting Dakota and Plaintiff Mildred from reasonable and equal access to Sedona Airport, and (2) invading the privacy of Plaintiff Eric and defaming his good name and reputation.

94. The discrimination outlined herein deprived Dakota and Plaintiffs of their rights secured by the Constitution and laws of the United States.

95. Defendants: (1) knowingly and intentionally acted according to their pattern or custom or policy to deprive Plaintiffs of their rights, and/or (2) ratified, approved, or made a deliberate choice to continue the discriminatory practices against Plaintiffs.

96. Defendants knew, either entirely or at least in part, their acts were illegal and discriminatory because the FAA so stated in its *Determination* and in its *Final Decision*.

97. Defendants intentionally treated Dakota and Plaintiffs differently than any other operator at Sedona Airport.

98. Defendants have no legitimate justification or rational basis for their harmful discrimination against Dakota or Plaintiffs.

99. Defendants' discriminatory actions were not related to any legitimate state interest; instead, Defendants' discriminatory actions were irrational and arbitrary, committed with the intent of causing harm to Dakota and Plaintiffs.

100. Defendants' unconstitutional and discriminatory conduct has irreparably and permanently caused harm to Plaintiffs, and will continue to harm them, by resulting in substantial loss of income, loss of business value, damage to their personal and business reputation and goodwill, and putting Plaintiffs at a significant competitive disadvantage to other operators at Sedona Airport.

101. The discriminatory actions of Defendants were and are the proximate cause of the harm suffered by Plaintiffs.

102. As a result of Defendants' discrimination, Plaintiffs are entitled to an award of damages, in an amount to be proven at trial.

103. Plaintiffs are also entitled to punitive damages for the intentional and willful misconduct by Defendants.

104. Plaintiffs are also entitled to attorneys' fees and costs incurred by this lawsuit.

## VIII.

### FOURTH CAUSE OF ACTION

### DISCRIMINATION PROHIBITED BY 42 U.S.C. §1983

### (BY ALL PLAINTIFFS AGAINST ALL SUPERVISORS, BOARD MEMBERS, AND MANAGERS, INDIVIDUALLY, FOR ECONOMIC AND NON-ECONOMIC DAMAGES)

105. Plaintiffs re-allege and incorporate herein by reference all allegations contained in the above paragraphs, as if fully set forth herein.

106. The Supervisors, Board Members, and Managers of Yavapai County and SOCAA acted under color of state law when they discriminated against Plaintiffs.

107. Additionally, the Supervisors, Board Members, and Managers of Yavapai County and SOCAA acted under color of state law when they (1) knew or should have known their subordinates were engaging in discriminatory practices as noted herein, yet failed to do anything about it; and/or (2) set in motion a series of acts by the subordinates, or they knowingly refused to terminate the acts, which deprived Plaintiffs of their rights.

108. The actions or inactions of the Supervisors, Board Members, and Managers, as noted above, caused harm to Plaintiffs.

109. The Supervisors, Board Members, and Managers are personally liable for damages suffered by Plaintiffs.

110. As a result of the unconstitutional conduct by the Supervisors, Board Members, and Managers, Plaintiffs are entitled to an award of damages, in an amount to be proven at trial.

111. Plaintiffs are also entitled to punitive damages for the intentional and willful discrimination by the Supervisors, Board Members, and Managers.

112. Plaintiffs are also entitled to attorneys' fees and costs incurred by this lawsuit.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request the Court grant the following relief:

1. For damages in excess of $75,000.00, with the amount to be proven at trial;

2. For punitive damages in an amount to be proven at trial;

3. For temporary and permanent injunctions barring Defendants from discriminating against Plaintiffs and from invading their privacy;

4. For an order of this Court requiring Defendants to allow Plaintiff Mildred equal access to Sedona Airport;

5. For attorneys' fees and costs of this suit; *and*

6. For such other relief as the Court deems to be just and proper.

Dated this 21st day of October 2023 at the City of Las Vegas, County of Clark, State of Nevada.

*RESPECTFULLY SUBMITTED BY:*
**ELLSWORTH & ASSOCIATES, LTD.**

/s/ Keen L. Ellsworth, Esq.
Keen L. Ellsworth, Esq.
Nevada Bar No. 4981
5840 W Craig Rd, #120-338
Las Vegas NV 89130-2561
Tel: (702) 767-9987
Fax: (702) 920-9871
Email: wynter@silverstatelaw.com
*Counsel for Plaintiffs*