**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mildred Brunner and Eric Brunner, | No. CV-23-08517-PCT-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Yavapai, Sedona-Oak Creek Airport Authority, Pam Fazzini, Unknown Parties, and Edward Rose, | |
| Defendants. | |

Mother-and-son plaintiffs Mildred and Eric Brunner previously owned and operated a small air touring company from the Sedona-Oak Creek Airport in Yavapai County. Mildred and Eric claim the airport's operating entity, defendant Sedona-Oak Creek Airport Authority (SOCAA), initiated a pattern of discrimination that ultimately resulted in their company's eviction from the airport. Mildred and Eric filed this complaint against SOCAA, its board members and manager (the "SOCAA Defendants") and Yavapai County and the members of its Board of Supervisors (the "Yavapai Defendants") as a result. Their complaint is dismissed.

## I.    Background

Beginning in 1994, Mildred and her late husband operated Dakota Territory Tours, A.C.C., dba Sedona Air Tours. (Doc. 28 at 6.) Dakota leased helipads and storefront, check-in-counter, and hangar space to operate an air touring business at the Sedona Airport. (Doc. 28 at 6–7.) The Sedona Airport is owned by Yavapai County, which created SOCAA to operate Sedona Airport. (Doc. 28 at 3.)

After Mildred's husband died in 2014, SOCAA allegedly began "discriminating against [Dakota]." (Doc. 28 at 7; Doc. 35 at 3.) The discriminatory acts included prohibiting Dakota from using SOCAA's helipads and hangar, storefront, and check-in-counter space and forcing Dakota to purchase fuel from Sedona Airport at inflated prices. (Doc. 28 at 7.)

SOCAA Defendants also allegedly "began unfounded personal attacks, false accusations against, and invading the privacy of" Dakota employees, including Eric. (Doc. 28 at 8.) SOCAA Defendants allegedly spread "false rumors" that Eric was "violent," placed tracking devices on his vehicles, hired private investigators to follow him, and prohibited him from attending "County or SOCAA public meetings" unless SOCAA or Yavapai Defendants hired security guards to be present, insinuating Eric would "breach the peace." (Doc. 28 at 8.)

As a result of these alleged actions, Dakota filed a complaint with the Federal Aviation Authority (FAA) against SOCAA and Yavapai Defendants on November 27, 2017. (Doc. 28 at 8.) As the FAA proceedings were ongoing, SOCAA Defendants continued to attempt to remove Dakota from the Sedona Airport. (Doc. 28 at 8.)

On July 29, 2021 the FAA found SOCAA and Yavapai Defendants "directly engaged, and [were] still engaging, in unlawful discriminatory acts against Dakota" and ordered SOCAA and Yavapai Defendants to submit a corrective action plan for the FAA's approval. (Doc. 28 at 8–9.) SOCAA Defendants refused and later "forcibly removed Dakota from the Sedona Airport." (Doc. 28 at 9.) The Arizona Court of Appeals affirmed the eviction on January 12, 2021 (Doc. 32-4 at 32–42), and the Arizona and U.S. Supreme Courts later denied review. (Doc. 32-5 at 109–112; Doc. 32-6 at 2–3.)[1]

After the eviction, Mildred and Eric continued operating Dakota from Cottonwood Airport but voluntarily filed for Dakota's Chapter 11 bankruptcy reorganization shortly

---

[1] Defendants ask the court to take judicial notice of these orders and plaintiffs did not respond in opposition. (Doc. 32 at 2.) The court grants the request for judicial notice. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (court may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts). This judicial notice does not convert the motions to dismiss into motions for summary judgment. *Critchlow v. Critchlow*, 617 F. App'x 664, 666 (9th Cir. 2015).

1    afterwards. (Doc. 28 at 10.) On October 14, 2022, Dakota's bankruptcy proceedings were

2    converted to Chapter 7 liquidation and Dakota's assets "have been, or are currently being,

3    liquidated" by the U.S. Trustee. (Doc. 28 at 10.)

4         Mildred and Eric allege SOCAA and Yavapai Defendants' actions "destroyed"

5    Dakota, resulting in the loss of Mildred's sole income, damage to Eric's reputation, and

6    invasion of Eric's privacy. (Doc. 28 at 11–12.) In July 2023, Mildred filed her initial

7    complaint. That complaint listed another plaintiff, Solid Edge Aviation, LLC, that was

8    identified as "the management company for Dakota." (Doc. 1 at 3.) That complaint alleged

9    violations of the Supremacy Clause and Fourteenth Amendment of the U.S. Constitution,

10   42 U.S.C. § 1983, and breach of the covenant of good faith and fair dealing against all

11   defendants. (Doc. 1.) Mildred filed an amended complaint on October 21, 2023, replacing

12   Solid Edge with Eric as a plaintiff and removing the breach of the covenant of good faith

13   and fair dealing claim. (Doc. 6.) On February 28, 2024, Mildred and Eric filed another

14   amended complaint excising their claim for violation of the Supremacy Clause. (Doc. 28.)

15        The operative second amended complaint is brought by Mildred and Eric and

16   contains three claims. First is a claim for "Violation of the Fourteenth Amendment and

17   Other Federal Laws" against all defendants. (Doc. 28 at 12.) It is not clear what legal theory

18   this count attempts to invoke because the complaint only alleges defendants "acted with

19   deliberate indifference to the known and obvious danger and risks their actions imposed

20   on Plaintiffs." (Doc. 28 at 12.) Second, a claim for "Discrimination Prohibited by 42 U.S.C.

21   § 1983" alleges Yavapai County and SOCAA engaged in unlawful "discrimination."

22   (Doc. 28 at 14.) Count three likewise claims Yavapai County supervisors and SOCAA

23   board members discriminated against Mildred and Eric under 42 U.S.C. § 1983. (Doc. 28

24   at 16.) Defendants moved to dismiss all claims and in the alternative to refer these claims

25   to bankruptcy court. (Docs. 31, 33, 34.)

26   **II.    Standard**

27        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

28   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id*. at 663–64.

## III. Discussion

### a. Standing

SOCAA and Yavapai Defendants argue Mildred and Eric lack standing to sue for Dakota's losses.[2] (Doc. 31 at 6; Doc. 33 at 2.) Standing requires a plaintiff allege (1) she has suffered a "concrete and particularized" injury in fact; (2) a fairly traceable connection between the harm alleged and the injury; and (3) the injury is redressable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Here, Mildred alleges SOCAA and Yavapai Defendants' actions against Dakota injured her economically and she was treated "differently than other similarly situated owners of air tour operators." (Doc. 28 at 11, 13.) In support of this claim, Mildred points to the alleged actions by SOCAA and Yavapai Defendants to remove Dakota—not Mildred—from the Sedona Airport and unwillingness to comply with the FAA's order. (Doc. 28 at 7–9.) "The same conduct may result in injury to both the corporation and the individual shareholders." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002). But an individual must demonstrate he was "injured directly and independently of [the corporation]." *Mallari v. Vessigault*, 771 F. App'x 835, 835 (9th Cir. 2019). Although Mildred provides conclusory statements alleging defendants "treated [her]

---

[2] The motions to dismiss do not involve all remaining defendants but the complaint's deficiencies are the same regarding all defendants. In these circumstances, the court dismisses all claims against all defendants. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (dismissal appropriate against non-appearing parties where same arguments apply).

differently than other similarly situated owners of air tour operators," her factual allegations rest entirely on harm to Dakota and she therefore lacks standing to assert an individual claim. (Doc. 28 at 13–14.)

Mildred also argues the actions against Dakota were injuries against her because Dakota was her only source of income. (Doc. 35 at 7–8.) But "it is not sufficient for the plaintiff to assert a personal economic injury resulting from a wrong to the corporation." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989).

Dignitary harm can be sufficiently concrete to confer standing in some instances. *See White v. Square, Inc*., 891 F.3d 1174 (9th Cir. 2018) ("[D]iscrimination itself . . . can cause serious non-economic injuries to those persons who are denied equal treatment solely because of their membership in a disfavored group."). But Mildred does not allege with any specificity that she experienced such harm here, only claiming without more that defendants "treated [her] differently than other similarly situated owners of air tour operators." (Doc. 28 at 13–14.) Without allegations that Mildred suffered some injury independent from Dakota's, Mildred does not have standing and her claims are dismissed.

Eric, on the other hand, alleges he was defamed, his "good name and reputation" damaged, and his privacy invaded by SOCAA and Yavapai Defendants. (Doc. 28 at 12.) These injuries are harm independent of any harms suffered by Dakota. Eric has standing. *RK Ventures*, 307 F.3d at 1057 (finding individual standing where owners and shareholders of corporation alleged personal injury for intentional infliction of emotional distress and defamation).

### b. Statute of Limitations

Although Eric has standing to bring his claims, they are barred by the statute of limitations. The only independent injury Eric alleges occurred prior to November 27, 2017. (Doc. 28 at 8.) The applicable statute of limitations in an action under 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Arizona statute of limitations for personal injury actions is two years. *See* A.R.S. § 12-542(1). Eric first appeared as a plaintiff in the amended

complaint on October 21, 2023, well over two years after the alleged harm. (Doc. 6.)

Eric argues the "discrimination by Defendants was constant and systematic" and he experienced a continuing injury. (Doc. 35 at 10.) But the only harm Eric alleges he individually experienced occurred before October 21, 2021. An amended complaint adding a party only relates back to the date of the original pleading when 1) the original complaint provided "adequate notice" of the newly proposed plaintiff's claims; 2) "the relation back does not unfairly prejudice the defendant"; and 3) the original and newly proposed plaintiffs have an "identity of interests." *Immigrant Assistance Project of Los Angeles Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 857 (9th Cir. 2002). Although the original complaint alleges SOCAA and Yavapai Defendants "spread[] false rumors that some of Dakota's personnel were violent," "plac[ed] tracking devices on vehicles utilized by Dakota personnel," "hir[ed] private investigators to secretly follow Dakota personnel," and required security guards at meetings where Dakota employees were present, it does not allege that Eric was the target of these actions. (Doc. 1 at 7.) Nor does it allege that these actions "constitute[d] invasions of privacy and/or an unreasonable search," which form the basis of Eric's claims against SOCAA and Yavapai Defendants. (Doc. 1 at 7; Doc. 28 at 13–14, 16.) And even if Eric's claims related back, the harm he alleges he experienced occurred before July 27, 2021.

Separately, even assuming Eric and Mildred had standing for Dakota's injuries—which they do not—these claims would also be barred by the statute of limitations. Mildred and Eric argue the limitation period begins when a plaintiff "knows or has reasons to know" of the relevant injury. (Doc. 35 at 9.) They argue without explanation that the "earliest possible date" they could have known of Dakota's injuries was the date of its eviction on February 14, 2022. (Doc. 35 at 10.) Alternatively, they claim under the "continuing violations theory" that the limitations period began to run when the bankruptcy was converted to Chapter 7 on October 14, 2022. (Doc. 35 at 11.) Both theories fail.

First, Mildred and Eric's claims accrued when they knew or had reason to know of their injuries, not when "the consequences of the acts became most painful." *Knox v. Davis*,

260 F.3d 1009, 1013 (9th Cir. 2001). For Dakota's eviction, the question is when Mildred and Eric had notice of the "operative decision," not when the "inevitable consequences" of that decision occurred. *RK Ventures*, 307 F.3d at 1058 (finding city's decision to institute abatement hearings against plaintiff, not beginning of abatement hearing, was the date of injury for statute of limitations). Here, SOCAA legal counsel delivered a lease termination letter to Dakota's legal counsel on June 26, 2017, approximately four years before July 27, 2021. (Doc. 32-2 at 73.)[3]

The "continuing violation theory," which previously allowed a plaintiff to seek relief for events outside of the limitations period in § 1983 actions, also does not salvage their claims. *Knox*, 260 F.3d at 1013. The Supreme Court clarified that the statute of limitations runs separately from each discrete act in § 1983 actions. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act."); *see also Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748 (9th Cir. 2019) (except for hostile work environment claims, "little remains of the continuing violations doctrine."). The only discrete act Mildred and Eric allege defendants committed within the limitations period is Dakota's eviction. (Doc. 35 at 10.) But as discussed, the eviction is an "inevitable consequence" of defendants' decision to terminate Dakota's lease.

Accordingly, all claims are barred by the statute of limitations.

### c.  Leave to Amend

In general, "[t]he court should freely give leave" to amend a complaint. Fed. R. Civ. P. 15(a)(2). But leave to amend is not appropriate when "'the amended complaint would be subject to dismissal.'" *Californians for Renewable Energy v. Cal. Pub. Utils. Comm'n*, 922 F.3d 929, 935 (9th Cir. 2019) (quoting *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)).

Mildred and Eric cannot state a claim for relief because the alleged harm falls

---

[3] A court may consider materials incorporated by reference in the complaint on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Mildred and Eric discuss their FAA Part 16 Complaint in the instant action and the court deems that document incorporated by reference. (Doc. 28 at 8.)

outside of the statute of limitations. Granting leave to amend would therefore be futile. *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011).

Accordingly,

**IT IS ORDERED** the Motions to Dismiss (Docs. 31, 33) are **GRANTED**. The complaint (Doc. 28) is **DISMISSED WITHOUT LEAVE TO AMEND**. The Clerk of Court shall enter a judgment of dismissal without prejudice.

**IT IS FURTHER ORDERED** SOCAA's Motion to Refer Claims to the Bankruptcy Court (Doc. 34) is **DENIED AS MOOT**.

Dated this 24th day of February, 2025.

Honorable Krissa M. Lanham
United States District Judge